### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

IN RE:                 )

      CHRISTINE F. KRAFT       )      No. 09-73434

                               )

          Debtor.          )

### NOTICE OF MOTION

To:    *See Attached Service List*

     YOU ARE HEREBY NOTIFIED that on October 28, 2009 at   9:30  a.m., or as soon thereafter as counsel may be heard, in Room 115 , petitioner shall then and there present the enclosed Motion for Relief from Stay and waive Rule 4001 (A)(3) before the Honorable Judge Manuel Barbosa  or any judge presiding in his stead at the United States Bankruptcy Court, 211 S. Court Street, Rockford, Illinois 61101.

You May Appear As You  See Fit.

By: _____

/s/      Robert M. Kamm, Its Attorney

### <u>CERTIFICATE OF MAILING</u>

     I, Robert M. Kamm, the undersigned attorney, certify that I served the foregoing Notice to the parties to whom it is addressed by placing a copy of same in the U.S. Mail at 17 North State Street, Chicago, Illinois  60602, at the hour of 5:00 p.m. on October  8 , 2009, with proper postage prepaid.

_____

Robert M. Kamm

## Service List

Judge Manuel Barbosa
211 South Court Street
Room 115
Rockford, Illinois 61101

Mark E. Zaleski
10 North Galena Avenue
#220
Freeport, IL 61032

James E. Stevens
6833 Stalter Drive
Rockford, IL 61108

Christine F. Kraft
P.O. Box 556
Freeport, IL 61032

Christine F. Kraft
518 North 3rd Avenue
Freeport, Illinois 61032

Office of the U.S. Trustee
780 Regent Street-Suite 304
Madison, WI 53715

U.S. Bankruptcy Court
Northern District of Illinois
Western Division
211 South Court Street
Rockford, Illinois 61101

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

IN RE:                                )
    CHRISTINE F. KRAFT,          )          No. 09-73434
                                )
        Debtor.            )

## MOTION FOR RELIEF FROM STAY

Fifth Third Bank by its attorneys, Kamm, Shapiro & Demuth, Ltd. for its Motion to Lift the Automatic Stay, states as follows:

1.    Movant is the owner and holder of two real estate mortgages executed by the Bankrupt and Marlin Kraft, her husband; one is on the property commonly known as 5239 W. Beaver Road, Freeport, IL and secures a Note having a balance on the petition date of $798,124.14; the other is on the property commonly known as 575 North Henderson Road, Freeport, IL and secures a Note having a balance on the Petition date of $140,083.39. True copies of the Mortgages and Notes are attached hereto respectively as **Exhibit A, B, C and D**.

2.    Christine F. Kraft and Marlin Kraft guaranteed all indebtedness of MCK Service, Inc. to Fifth Third Bank including the $798,124.14 referred to above and another indebtedness of $24,318.41 and executed the Mortgage on 5238 W. Beaver Road, Freeport, IL and 575 North Henderson, which secure all MCK Services, Inc. indebtedness to Fifth Third Bank. True copies of the guarantees are attached hereto on **Exhibit E and F**.

3.    The property located at 5295 South Beaver has a liquidation value of $470,000.00; the property located at 575 North Henderson has a liquidation value of $146,250.00.

4.    The loan evidenced by Exhibit B is in default in that the loan matured September 15, 2009 and was not paid at maturity, nor were the August 3, 2009 and September 3, 2009 payments

made. Real estate taxes are also unpaid in the amount of $1,358.84.

5.     The loan evidenced by Exhibit D is in default in that the September 3, 2009 and subsequent monthly payments have not been made.  The default on Exhibit B constitutes a default on Exhibit D.  Real estate taxes are unpaid in the amount of $3,594.94.

Wherefore, Fifth Third Bank prays for relief from the automatic stay so as to permit it to foreclose and sell the real property described on Exhibit A and C.

FIFTH THIRD BANK,

BY: _____

Its Attorneys

Kamm, Shapiro & Demuth, Ltd.
17 North State Street
Suite 990
Chicago, Illinois 60602
312/726-9777(Phone)
312/726-9550(Fax)
ARDC No. 02565994

Instrument    Book Page
200700087104 OR 139 1357

2008121816727T

This instrument was
prepared by and after
recording should be
returned to:

200700087104
Filed for Record in
STEPHENSON COUNTY, IL
VICI OTTE
07-09-2007 AtuROFILMED
MORTGAGE STEPHENSON COUNTY
STATE TAX          .00
LOCAL TAX          .00
OR Book  139 Page 1357 - 1378
RHSP Surcharge      10.00

Fifth Third Bank
222 South Riverside Plaza
Chicago, Illinois 60606
Cook County Illinois

RECORDED BY
SECURITY FIRST TITLE CO.
PH. # (815) 235-2900
FAX # (815) 235-9955
68843 S

023 - FTCH

**Fifth Third Bank**

## Mortgage, Security Agreement and Financing Statement

(Maximum Amount Unpaid Principal Indebtedness $800,000.00)

THIS MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT (the "Mortgage") made as of July 3, 2007, by Merlin J. Kraft, a married male whose spouse is Christine F. Kraft residing at 5293 W. Beaver, Freeport, Stephenson County, Illinois 61032 and Christine F. Kraft, a married female whose spouse is Merlin J. Kraft residing at 5293 West Beaver, Freeport, Stephenson County, Illinois 61032 (collectively and jointly and severally, the "Mortgagor") in favor of Fifth Third Bank, a Michigan banking corporation located at 222 South Riverside Plaza, Chicago, Cook County, Illinois 60606 for itself and as agent for any affiliate of Fifth Third Bancorp (the "Mortgagee").

W I T N E S S E T H :

WHEREAS, MCK Services, Inc., an Illinois corporation (the "Borrower"), is indebted to Mortgagee in the aggregate principal amount of Eight Hundred Thousand and 00/100 Dollars ($800,000.00) pursuant to the Revolving Note, dated July 3, 2007, executed by Borrower and made payable to the order of Mortgagee, in the principal amount of $800,000.00 (the "Note"), and all agreements, instruments and documents executed or delivered in connection with the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Borrower Documents"); and

WHEREAS, Mortgagor is indebted to Mortgagee by virtue of a Continuing Guaranty Agreement for the benefit of Mortgagee executed by Mortgagor (as the same may be amended, modified or restated from time to time (the "Guaranty"); and

WHEREAS, the Borrower Documents and the Guaranty, as the same may be amended, modified and restated from time to time shall be collectively referred to herein as the "Loan Documents"); and

OPEN-END-MORTGAGE © Fifth Third Bancorp 2001





EXHIBIT
A

63436-2-3-T.WHIT

WHEREAS, Mortgagor, jointly and severally, desires to grant herein a first priority mortgage to Mortgagee encumbering the real estate described below.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, and to secure (i) the payment of the Indebtedness and Impositions (as defined below) and the interest thereon, at a variable rate, (ii) the payment of any advances or expenses of any kind incurred by Mortgagee pursuant to the provisions of or on account of the Loan Documents or this Mortgage, (iii) the repayment of future advances disbursed by Mortgagee to Mortgagor or the Borrower, respectively in excess of the principal of the Indebtedness, and (iv) the performance of the obligations of the Mortgagor or the Borrower, respectively, under the Loan Documents, the parties hereby agree as follows:

## ARTICLE 1

### GRANTING PROVISIONS

The Mortgagor does hereby grant, bargain, sell, release, convey, assign, transfer, grant a security interest in and mortgage to Mortgagee, its successors and assigns forever, (a) the real estate located in Stephenson County, Illinois, more particularly described in Exhibit A attached hereto (hereinafter the "Site"), and (b) all of the estate, title and interest of Mortgagor, in law or equity, of, in and to such real estate and the buildings and improvements now existing, being constructed, or hereafter constructed or placed thereon, all of the rights, privileges, licenses, easements and appurtenances belonging to such real estate (including all heretofore or hereafter vacated streets or alleys which are about such real estate), and all fixtures of every kind whatsoever located in or on, or attached to, and used or intended to be used in connection with or with the operation of such real estate, buildings, structures or other improvements thereon or in connection with any construction now or to be conducted or which may be conducted thereon, together with all building materials and equipment now or hereafter delivered to such real estate and intended to be installed therein; and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing, and the proceeds of any of the foregoing (all of the foregoing, including the Site, being hereinafter collectively called the "Property").

The Mortgagor further hereby grants, conveys, and assigns to Mortgagee, its successors and assigns all rents, issues and profits of any of the foregoing and all proceeds of the conversion (whether voluntary or involuntary) of any of the same into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards.

TO HAVE AND TO HOLD the Property hereby conveyed, granted and assigned, unto Mortgagee, and its successors and assigns forever, for the uses and purposes herein set forth.

## ARTICLE 2

### REPRESENTATIONS AND WARRANTIES

2.1    In General.  Mortgagor represents and warrants that it is the sole lawful owner in fee simple of the Property, that its title in and to the Property is free, clear and unencumbered except for those covenants and restrictions of record approved by Mortgagee in a signed writing and attached hereto as Exhibit B and except for real estate taxes and assessments not yet due and payable; that it has good legal right, authority, and full power to sell and convey the same and to execute this Mortgage; that Mortgagor will make any further assurances of title that Mortgagee may require; that Mortgagor will warrant and defend the Property against all claims and demands whatsoever, and that Mortgagor will keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

2.2    No Proceedings.  Mortgagor represents, covenants and warrants that there are no suits or proceedings pending, or, to the knowledge of Mortgagor, threatened against or affecting Mortgagor which, if adversely determined, would have an adverse effect on the Property or financial condition or business of Mortgagor.

## ARTICLE 3

### COVENANTS

Mortgagor hereby covenants and agrees with Mortgagee as follows:

3.1 <u>Indebtedness.</u> Mortgagor will, or will cause the Borrower to, promptly pay and perform, or promptly cause to be paid and performed, when due, the following obligations (hereinafter collectively called the "Indebtedness"):

(a) each and every term, provision, condition, obligation, covenant, and agreement of Mortgagor or the Borrower, respectively set forth in this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing;

(b) all future advances disbursed by Mortgagee to Mortgagor or the Borrower, respectively under Section 6.12 (Future Advances) of·this Mortgage; and

(c) all loans, advances, indebtedness and each and every other·obligation or liability of Mortgagor or Borrower owed to Mortgagee or any affiliate of Fifth Third Bancorp, however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or ·contingent, due or to become due, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease, overdraft, agreement, or otherwise, whether or not secured by additional collateral, whether originated with Mortgagee or owed to others and acquired by Mortgagee by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and every obligation arising under the Loan Documents, all obligations to perform·or forbear from performing acts, any and all Rate Management Obligations (as defined in the Loan Documents), all amounts represented by letters of credit now or hereafter issued by Mortgagee or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Mortgagor or the Borrower, respectively, all agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, and all expenses and attorneys' fees incurred or other sums disbursed by Mortgagee or any affiliate of Fifth Third Bancorp under this Mortgage or any other document, instrument or agreement related to any of the foregoing.

3.2 <u>Impositions.</u>

(a) Mortgagor will pay, or cause to be paid, when due all of the following (hereinafter collectively called the "Impositions"): all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, and all other governmental levies and charges, of every kind and nature whatsoever, general and special, ordinary and extraordinary, which are assessed, levied, confirmed, imposed or become a lien upon or against the Property or any portion thereof, and all taxes, assessments and charges upon the rents, issues, income or profits of the Property, or which become payable with respect thereto or with respect to the occupancy, use or possession of the Property, whether such taxes, assessments or charges are levied directly or indirectly. Mortgagor shall deliver proof of payment of all such Impositions to Mortgagee upon the request of Mortgagee. Notwithstanding any provision to the contrary in this Section 3.2(a), any tax or special assessment which is a lien on the Property may be paid in installments, provided that each installment is paid on or prior to the date when the same is due without the imposition of any penalty.

(b) At the sole election of Mortgagee, Mortgagor shall pay to Mortgagee, with each payment that shall become due and payable pursuant to terms of the Loan Documents, the appropriate portion of the annual amount estimated by Mortgagee to be sufficient to pay the real estate taxes and assessments levied against the Property and the insurance premiums for policies required under Section 3.6 (Insurance) of this Mortgage, and such sums shall be held by Mortgagee without interest in order to pay such taxes, assessments and insurance premiums 30 days prior to their due date; <u>provided that</u> if an Event of Default shall occur under this Mortgage, Mortgagee may elect to apply, to the full extent permitted by law, any or all of said sums held pursuant to this Section 3.2(b) in such manner as Mortgagee shall determine in its sole discretion.

Case 09-73434    Doc 20    Filed 10/08/09    Entered 10/08/09 15:02:50    Desc Main
Document    Page 8 of 38
Instrument
200700087104 OR
Book Page
139 1360

3.3    Compliance with Laws. Mortgagor will comply with all federal, state and local laws, regulations and orders to which the Property or the activities conducted on the Property are subject.

3.4    Condition of Property. Mortgagor will maintain the Property in good order and condition and make all repairs necessary to that end, will suffer no waste to the Property, and will cause all repairs and maintenance to the Property to be done in a good and workmanlike manner.

3.5    Improvements. Mortgagor will not remove or materially change any improvements once installed or placed on the Property, or suffer or permit others to do so.

3.6    Insurance.

(a)    Mortgagor at its sole cost and expense shall provide and keep in force at all times for the benefit of Mortgagee, in accordance with the Loan Documents, with respect to the Property (with such deductibles as may be satisfactory to Mortgagee, from time to time, in its reasonable discretion): (i) insurance against loss of or damage to the Improvements by fire and other hazards covered by so-called "extended coverage" insurance, with a replacement cost endorsement, and such other casualties and hazards as Mortgagee shall reasonably require from time to time; (ii) earthquake insurance; (iii) flood insurance in the maximum available amount if the Improvements are located in a flood hazard area; (iv) business interruption insurance; (v) boiler and machinery insurance; (vi) comprehensive general public liability insurance against claims for bodily injury, death or property damage in customary and adequate amounts, or, in Mortgagee's discretion, in such amounts as may be reasonably satisfactory or desirable to Mortgagee, from time to time, in its reasonable discretion; (vii) during the course of any construction or repair of the Property, workers' compensation insurance for all employees involved in such construction or repair, and builder's risk completed value insurance against "all risks of physical loss," covering the total value of work performed and equipment, supplies and materials furnished, and containing the "permission to occupy upon completion of work or occupancy" endorsement; and (viii) such other insurance on the Property (including, without limitation, increases in amounts and modifications of forms of insurance existing on the date hereof); as Mortgagee may reasonably require from time to time.  The policies of insurance required by this Section 3.6(a) shall be with such companies, in such forms and amounts, and for such periods, as Mortgagee shall require from time to time, and shall insure the respective interests of Mortgagor and Mortgagee.  Such insurance may be provided in umbrella policies which insure any and all real or personal property in which Mortgagor has an interest in addition to the Property, any property encumbered by any other deed of trust or mortgage given by Mortgagor for the benefit of Mortgagee, or any personal property in which a security interest in favor of Mortgagee has been granted under the Loan Documents. The insurance proceeds from all such policies of insurance (other than the proceeds from the comprehensive general public liability policy required under clause (vi) above) shall be payable to Mortgagee pursuant to a noncontributing first mortgage endorsements satisfactory in form and substance to Mortgagee. Certificates of the original policies and renewals thereof covering the risks provided by this Mortgage to be insured against, and bearing satisfactory evidence of payment of all premiums thereon, shall be delivered to and held by Mortgagee on demand. Without limiting the generality of the foregoing, Mortgagor shall deliver to Mortgagee all insurance policies and certificates that are requested by Mortgagee. At least thirty (30) days prior to the expiration of each policy required to be provided by Mortgagor, Mortgagor shall deliver certificates of renewal policies to Mortgagee with appropriate evidence of payment of premiums therefore. All insurance policies required by this Mortgage shall (1) include effective waivers by the insurer of all rights of subrogation against any named insured and any other loss payee; and (2) provide that any losses shall be payable to Mortgagee notwithstanding:

(i)    any act, failure to act or negligence of or violation of warranties, declarations or conditions contained in such policy by any named insured or other loss payee,

(ii)    the occupation or use of the Improvements or the Site for purposes more hazardous than permitted by the terms thereof,

(iii)    any foreclosure or other action or proceeding taken by Mortgagee pursuant to any provisions of this Mortgage, or

(iv)    any change in title to or ownership of the Property;

(3) provide that no cancellation, reduction in amount or material change in coverage thereof shall be effective until at least thirty (30) days after receipt by Mortgagee of written notice thereof; and (4) be satisfactory in all other respects to Mortgagee. Mortgagor shall not permit any activity to occur or condition to exist on or with respect to the Property that would wholly or partially invalidate any of the insurance thereon. Mortgagor shall give prompt written notice to Mortgagee of any damage to, destruction of or other loss in respect of the Property, irrespective of whether any such damage, destruction or loss gives rise to an insurance claim. Mortgagor shall not carry additional insurance in respect of the Property unless such insurance is endorsed in favor of Mortgagee as loss payee.

(b)    Mortgagor irrevocably makes, constitutes and appoints Mortgagee (and all officers, employees or agents designated by Mortgagee) as Mortgagor's true and lawful attorney-in-fact and agent, with full power of substitution, for the purpose of making and adjusting claims under such policies of insurance, endorsing the name of Mortgagor on any check, draft, instrument or other item or payment for the proceeds of such policies of insurance and for making all determinations and decisions with respect to such policies of insurance required above or to pay any premium in whole or in part relating thereto. Mortgagee, without waiving or releasing any obligations or default by Mortgagor hereunder, may (but shall be under no obligation to do so) at any time maintain such action with respect thereto which Mortgagee deems advisable. All sums disbursed by Mortgagee in connection therewith, including attorneys' fees, court costs, expenses and other charges relating thereto, shall be payable, on demand, by Mortgagor to Mortgagee and shall be additional Indebtedness secured by this Mortgage.

(c)    All proceeds of the insurance required to be obtained by Mortgagor hereunder, other than those relating to the comprehensive general public liability insurance, shall be held in trust for and paid promptly to Mortgagee, and Mortgagee may deduct from such proceeds any expenses, including, without limitation, legal fees, incurred by Mortgagee in connection with adjusting and obtaining such proceeds (the balance remaining after such deduction being hereinafter referred to as the "Net Insurance Proceeds"). Mortgagee may, at its option, either: (1) apply the Net Insurance Proceeds in reduction or satisfaction of all or any part of the Indebtedness, whether then matured or not, in which event Mortgagor shall be relieved of its obligation to maintain and restore the property relating to such proceeds to the extent that Mortgagee so applies such Net Insurance Proceeds; or (2) release the Net Insurance Proceeds to Mortgagor in whole or in part upon conditions satisfactory to Mortgagee. Prior to the occurrence of an Event of Default, Mortgagor shall have the right to adjust and compromise any such claims, subject to Mortgagee's prior consent thereto, which consent shall not be unreasonably withheld.

(d)    The application of any insurance proceeds toward the payment or performance of the Indebtedness shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the rest of the Indebtedness in accordance with the provisions of this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing.

(e)    In the event of a foreclosure under this Mortgage, the purchaser of the Property shall succeed to all of the rights of Mortgagor, including any right to unearned premiums, in and to all policies of insurance which Mortgagor is required to maintain under this Section 3.6 and to all proceeds of such insurance.

(f)    Unless Mortgagor provides Mortgagee evidence of the insurance coverages required hereunder, Mortgagee may purchase insurance at Mortgagor's expense to cover Mortgagee's interest in the Premises. The insurance may, but need not, protect Mortgagor's interest. The coverages that Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Premises. Mortgagor may later cancel any insurance purchased by Mortgagee, but only after providing Mortgagee with evidence that Mortgagor has obtained insurance as required by this Mortgage. If Mortgagee purchases insurance for the Premises, Mortgagor will be responsible for the costs of such insurance, including, without limitation, interest and any other charges which Mortgagee may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the Indebtedness. The cost of the insurance may be more than the cost of insurance Mortgagor may be able to obtain on its own.

3.7    Sale, Transfer or Encumbrance.

(a)    Mortgagor will not further mortgage, sell or convey, or grant a deed of trust, pledge, or grant a security interest in any of the Property, or contract to do any of the foregoing, or execute a land contract or installment sales contract, enter into a lease (whether with or without option to purchase) or otherwise dispose of, further encumber or suffer the encumbrance of any of the Property, whether by operation of law or otherwise.

(b)    Mortgagor shall pay and discharge promptly, at Mortgagor's cost and expense, all liens, encumbrances, and charges upon any part of the Property or any interest therein. If Mortgagor shall fail to discharge any such lien, encumbrance, or charge, then, in addition to any other right or remedy of Mortgagee, Mortgagee may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond or the amount claimed or otherwise giving security for such claim, or in such manner as is or may be prescribed by law.

(c)    Mortgagor will not institute or cause to be instituted any proceedings that could change the permitted use of the Property from the use presently zoned, and shall not grant any easements or licenses with respect to the Property.

(d)    If a portion of the Property, or any beneficial interest therein, is sold, conveyed, transferred, encumbered, or full possessory rights therein transferred, whether voluntarily, involuntarily, or by operation of law, then the Mortgagee may declare all sums secured by this Mortgage to be immediately due and payable, whether or not the Mortgagee has consented or waived its rights in connection with any previous transaction of the same or a different nature.

3.8    Eminent Domain.

(a)    Mortgagor shall give immediate notice to Mortgagee upon Mortgagor's obtaining knowledge of (i) any interest on the part of any person possessing or who has expressed the intention to possess the power of eminent domain to purchase or otherwise acquire the Property or (ii) the commencement of any action or proceeding to take the Property by exercise of the right of condemnation or eminent domain or of any action or proceeding to close or to alter the grade of any street on or adjoining the Site. At its option Mortgagee may participate in any such actions or proceedings in the name of Mortgagee or, whenever necessary, in the name of Mortgagor, and Mortgagor shall deliver to Mortgagee such instruments as Mortgagee shall request to permit such participation. Mortgagor shall not settle any such action or proceeding, whether by voluntary sale, stipulation or otherwise, or agree to accept any award or payment without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld. The total of all amounts awarded or allowed with respect to all right, title and interest in and to the Property or the portion or portions thereof taken or affected by such condemnation or eminent domain proceeding and any interest thereon (herein collectively called the "Award") is hereby assigned to, and shall be paid upon receipt thereof, to Mortgagee and the amount received shall be retained and applied as provided in Paragraph 3.8(b) below.

(b)    Upon Mortgagee's receipt of any Award, Mortgagee may, at its option, either: (i) retain and apply the Award toward the Indebtedness; or (ii) subject to such escrow provisions as Mortgagee may require, pay the Award over in whole or part to pay or reimburse Mortgagor for the cost of restoring or reconstructing the Property remaining after such taking (the "Remaining Property"). If Mortgagee elects to pay the Award, or any part thereof, over to Mortgagor upon the completion of the restoration or reconstruction of the Remaining Property, any portion of the Award not used for the restoration or reconstruction of the Remaining Property shall, at the option of Mortgagee, be applied in reduction of the Indebtedness; provided, however, that to the extent that such portion of the Award shall exceed the amount required to satisfy in full the Indebtedness, Mortgagee shall pay the amount of such excess to Mortgagor or otherwise as required by law. In no event shall Mortgagee be required to release this Mortgage until the Indebtedness is fully paid and performed, nor shall Mortgagee be required to release from the lien of this Mortgage any portion of the Property so taken until Mortgagee receives the Award for the portion so taken.

(c)     The application of the Award toward payment or performance of any of the Indebtedness shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the balance of the Indebtedness in accordance with the provisions of this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing.  Mortgagee shall have the right, but shall be under no obligation, to question or appeal the amount of the Award, and Mortgagee may accept same without prejudice to the rights that Mortgagee may have to question or appeal such amount.  In any such condemnation or eminent domain action or proceeding Mortgagee may be represented by attorneys selected by Mortgagee, and all sums paid by Mortgagee in connection with such action or proceeding, including, without limitation, attorneys' fees, court costs, expenses and other charges relating thereto shall, on demand, be immediately due and payable from Mortgagor to Mortgagee and the same shall be added to the Indebtedness and shall be secured by this Mortgage.

(d)     Notwithstanding any taking by condemnation or eminent domain, closing of, or alteration of the grade of, any street or other injury to or decrease in value of the Property by any public or quasi-public authority or corporation, the Indebtedness shall continue to bear interest until the Award shall have been actually received by Mortgagee, and any reduction in the Indebtedness resulting from the application by Mortgagee of the Award shall be deemed to take effect only on the date of such receipt thereof by Mortgagee.

3.9     <u>Rights of Mortgagee.</u>  If Mortgagor fails to pay when due any Impositions when so required by this Mortgage, or if an Event of Default occurs under this Mortgage, Mortgagee at its option may pay such Impositions.  If Mortgagor fails to perform any of its obligations under this Mortgage with respect to the Property, Mortgagee at its option may (but shall not be obligated to) perform any such obligations of Mortgagor.  Mortgagee may enter upon the Property for the purpose of performing any such act, or to inspect the Property.  All Impositions paid by Mortgagee and all monies expended by Mortgagee in performing any such obligations of Mortgagor (including legal expenses and disbursements), shall bear interest at a floating rate per annum equal to six percent (6%) in excess of the Prime Rate of Fifth Third Bank then in effect, and such interest shall be paid by Mortgagor upon demand by Mortgagee and shall be additional Indebtedness secured by this Mortgage.

3.10     <u>Conflict Among Agreements.</u>  In the event of any conflict between the provisions of this Mortgage and the provisions of the Loan Documents, the provisions of the Loan Documents shall prevail.

3.11     <u>Notifications.</u>  Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

(a)     a fire or other casualty causing damage to the Property in excess of $20,000;

(b)     receipt of notice of condemnation of the Property or any part thereof;

(c)  .   receipt of notice from any governmental authority relating to the structure, use or occupancy of the Property;

(d)     receipt of any notice of alleged default from the holder of any lien or security interest in the Property;

(e)     the commencement of any litigation affecting the Property; or

(f)     any change in the occupancy of the Property.

3.12     <u>Hazardous Substances.</u>

(a)     As used in this Section: (i) "Hazardous Substances": are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (ii) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; (iv) an "Environmental Condition" means a condition that can cause, contribute to, or

otherwise trigger an Environmental Cleanup; (v) the terms "Release", "Owner", "Operator", "Environment", and "Natural Resources" shall have the same meanings and definitions as set forth in the Comprehensive Environmental Response Compensation and Liability Act as amended, 42 U.S.C. §9601 et seq. and regulations promulgated thereunder (collectively "CERCLA") and any corresponding state or local law or regulation, provided, however, that as used herein the term Hazardous Substance shall also include: (A) any Pollutant or Contaminant as defined by CERCLA or by any other Environmental Law; (B) any Solid Waste, Hazardous Constituent or Hazardous Waste as defined by, or as otherwise identified by, the Resource Conservation and Recovery Act as amended 42 U.S.C. §6901 et seq. or regulations promulgated thereunder (collectively, "RCRA") or by any other Environmental Law; and (C) crude oil, petroleum, and fractions or distillates thereof; and (vi) the terms "Storage", "Treatment" and "Disposal" shall have the same meanings and definitions as set forth in RCRA.

(b)     Mortgagor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Mortgagor shall not do, nor allow anyone else to do, anything affecting the Property (i) that is in violation of any Environmental Law, (ii) which creates an Environmental Condition, or (iii) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

(c)     Mortgagor shall promptly give Mortgagee written notice of (i) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Mortgagor has actual knowledge, (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (iii) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Mortgagor learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Mortgagor shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Mortgagee for an Environmental Cleanup.

(d)     The Mortgagor hereby agrees to release, hold harmless, defend and indemnify Mortgagee from, for and against all actual or threatened claims, costs (including but not limited to the cost of investigation, removal, remediation and other clean up of Hazardous Substances, and reasonable fees of attorneys and other professionals, experts and consultants retained by Mortgagee) demands, orders, losses, lawsuits, liabilities, damages (including without limitation all consequential damages) and expenses whether brought collectively or individually by Mortgagor, a governmental authority or any other third party (all the foregoing hereinafter collectively referred to as  "Losses") arising from or related to any of the following:

(i)     The past, present or future Release, threatened Release, Storage, Treatment, accumulation, generation, utilization, Disposal, transportation or other handling or migration of any Hazardous Substance on, in, onto, or from the Property.

(ii)     The violation or alleged violation of Environmental Laws occurring on or related to the Property.

(iii)     Any action taken by Mortgagee to eliminate, prevent, or mitigate the potential adverse impact on the Real Estate or the Mortgagee as a result of or in anticipation of any actual, suspected or threatened violation of Environmental Laws or Release or threatened Release of a Hazardous Substance on, in or from or otherwise affecting the Property; such action may include but need not be limited to, the disposition, distribution, sale, disclaimer, or renunciation or any portion of the Real Estate.

(iv)     The costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, remedial or other required plans.

Clauses (d)(i) through (iv) above are hereinafter referred to collectively as "Environmental Matters."

(e)    The Mortgagor hereby agrees that Mortgagee shall be reimbursed directly by the Mortgagor or if a sale of all or part of the Real Estate occurs, from the Real Estate or proceeds thereof for any Losses suffered or sustained or threatened to be suffered or sustained by Mortgagee as a result of Environmental Matters, until such time as the Mortgagee has been reimbursed in full.

(f)    This indemnity shall survive the release of the lien of this Mortgage, or the extinguishment of the lien by foreclosure or deed in lieu thereof or by any other action. The foregoing covenant regarding survival shall survive such release or extinguishment.

### ARTICLE 4

### EVENTS OF DEFAULT

Any of the following events shall be an Event of Default:

4.1    Cross-Default.    An Event of Default occurs under any of the Loan Documents or in any amendments, modifications or restatements to any of the foregoing.

4.2    Breach of Covenants.    Mortgagor defaults in the performance or observance of any of the following covenants:

(a)    to maintain in force the insurance required by Section 3.6 (Insurance) of this Mortgage;

(b)    to comply with any of the notice requirements set forth in Section 3.6 (Insurance), Section 3.8 (Eminent Domain) or Section 3.11 (Notifications) of this Mortgage; or

(c)    any other covenant or agreement contained in this Mortgage and such default continues for 30 days after notice thereof from Mortgagee.

4.3    Representation or Warranty Untrue.    Any representation or warranty of the Mortgagor under this Mortgage or any other Loan Document is untrue or misleading in any material respect.

4.4    Foreclosure.    A foreclosure proceeding (whether judicial or otherwise) is instituted with respect to any mortgage or lien of any kind encumbering any portion of the Property.

4.5    Other Obligations.    Any default occurs under any other obligation of Mortgagor or the Borrower, respectively to Mortgagee or otherwise described herein as Indebtedness.

### ARTICLE 5

### REMEDIES

5.1    Remedies.    Upon the occurrence, and until the waiver by Mortgagee, of an Event of Default:

(a)    Mortgagee may declare the entire balance of the Indebtedness to be immediately due and payable, and upon any such declaration, the entire unpaid balance of the Indebtedness shall become and be immediately due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by Mortgagor.

(b)    Mortgagee may institute a proceeding or proceedings, judicial or otherwise, for the complete or partial foreclosure of this Mortgage under any applicable provision of law.

20081218-16721Y

(c)    Mortgagee may institute a proceeding or proceedings to eject Mortgagor from possession of the Property and to obtain possession of the Property by Mortgagee, with or without instituting a foreclosure proceeding.

(d)    Mortgagee may sell (the power of sale, if permitted and provided by applicable law, being expressly granted by Mortgagor to Mortgagee) the Property, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property, and at such time and place and upon such terms as Mortgagee may deem expedient, or as may be required by applicable law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property.

(e)    Mortgagee may institute an action, suit or proceeding in equity for the specific performance of any of the provisions contained in this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing.

(f)    Mortgagee may apply for the appointment of a receiver, custodian, trustee, liquidator or conservator of the Property to be vested with the fullest powers permitted under applicable law, as a matter of right and without regard to, or the necessity to disprove, the adequacy of the security for the Indebtedness or the solvency of Mortgagor or any other person liable for the payment of the Indebtedness, and Mortgagor and each such person liable for the payment of the Indebtedness consents or shall be deemed to have consented to such appointment.

(g)    Mortgagee may enter upon the Property, and exclude Mortgagor and its agents and servants wholly therefrom, without liability for trespass, damages or otherwise, and take possession of all books, records and accounts relating thereto and all other Property; and having and holding the same Mortgagee may use, operate, manage, preserve, control and otherwise deal therewith and conduct the business thereof, without interference from Mortgagor; and upon each such entry and from time to time thereafter Mortgagee may, at the expense of Mortgagor and the Property, without interference by Mortgagor and as Mortgagee may deem advisable, (i) insure or reinsure the Property, (ii) make all necessary or proper repairs, renewals, replacements, alterations, additions, betterments and improvements thereto and thereon and (iii) in every such case in connection with the foregoing have the right to exercise all rights and powers of Mortgagor with respect to the Property, either in Mortgagor's name or otherwise.

(h)    Mortgagee may, with or without entering upon the Property, collect, receive, sue for and recover in its own name all rents and cash collateral derived from the Property, and may deduct therefrom all costs, expenses and liabilities of every character incurred by Mortgagee in controlling the same and in using, operating, managing, preserving and controlling the Property, and otherwise in exercising Mortgagee's rights under this Mortgage or the Loan Documents, including, but not limited to, all amounts disbursed to pay Impositions, insurance premiums and other charges in connection with the Property, as well as compensation for the services of Mortgagee and its respective attorneys, agents and employees.

(i)    Mortgagee may release any portion of the Property for such consideration as Mortgagee may require without, as to the remainder of the Property, in any way impairing or affecting the position of Mortgagee with respect to the balance of the Property; and Mortgagee may accept by assignment, pledge or otherwise any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lienholder.

(j)    Mortgagee may take all actions, or pursue any other right or remedy, permitted under the Uniform Commercial Code in effect in the State in which the Property is located, under any other applicable law or in equity.

5.2    <u>Mortgagee's Cause of Action.</u>  Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage or the Loan Documents, as the same become due, without regard to whether or not the principal indebtedness or any other sums secured by this

Mortgage or the Loan Documents shall be due, and without prejudice to the right of Mortgagee thereafter to institute foreclosure or otherwise dispose of the Property or any part thereof, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

5.3   Costs and Expenses.   There shall be allowed and included as additional indebtedness secured by the lien of this Mortgage, all expenditures and expenses of Mortgagee for attorneys' fees, court costs, appraisers' fees, sheriff's fees, documentary and expert evidence, stenographers' charges, publication costs and such other costs and expenses as Mortgagee may deem reasonably necessary to exercise any remedies or to evidence to bidders at any sale of the Property the true condition of the title to or the value of the Property. All such expenditures and expenses shall bear interest at a floating rate per annum equal to six percent (6%) in excess of the Prime Rate of Fifth Third Bank then in effect, and such interest shall be paid by Mortgagor upon demand by Mortgagee and shall be additional Indebtedness secured by this Mortgage.

5.4   Proceeds.   The proceeds received by Mortgagee in any foreclosure sale of the Property shall be distributed and applied in the following order of priority: first, on account of all costs and expenses incident to the foreclosure proceedings, including all such items as are mentioned in Section 5.3; second, to all other items which under the terms hereof constitute Indebtedness or Impositions; and, third, any surplus to Mortgagor, its legal representatives or assigns, or to third persons with rights to the proceeds, as their rights may appear.

5.5   Receiver.   Without limiting the application of Section 5.1 of this Mortgage, upon, or at any time after, the filing of a suit to foreclose this Mortgage, Mortgagee shall be entitled to have a court appoint a receiver of the Property. Such appointment may be made either before or after sale, without notice to Mortgagor or any other person, without regard to the solvency of the person or persons, if any, liable for the payment of the Indebtedness and without regard to the then value of the Property, and Mortgagee may be appointed as such receiver. The receiver shall have the power to collect the rents, issues and profits of the Property during the pendency of such foreclosure suit, as well as during any further times when Mortgagee, absent the intervention of such receiver, would be entitled to collect such rents, issues and profits, and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of such period. The court from time to time may authorize the receiver to apply net income in the Receiver's hands in payment in whole or in part of the Indebtedness, or in payment of any tax, assessment or other lien that may be or become superior to the lien hereof or superior to a decree foreclosing this Mortgage, provided such application is made prior to foreclosure sale.

5.6   Rights Cumulative.   The rights of Mortgagee arising under the provisions and covenants contained in each of the Mortgage and the Loan Documents shall be separate, distinct and cumulative, and none of them shall be exclusive of the others. In addition to the rights set forth in this Mortgage or any other Loan Documents, Mortgagee shall have all rights and remedies now or hereafter existing at law or in equity or by statute. Mortgagee may pursue its rights and remedies concurrently or in any sequence, and no act of Mortgagee shall be construed as an election to proceed under any one provision herein or in such other documents to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding. If Mortgagor fails to comply with this Mortgage, no remedy of law will provide adequate relief to Mortgagee, and Mortgagee shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages.

5.7   No Merger.   If Mortgagee shall at any time hereafter acquire title to any of the Property, then the lien of this Mortgage shall not merge into such title, but shall continue in full force and effect to the same extent as if the Mortgagee had not acquired title to any of the Property. Furthermore, if the estate of the Mortgagor shall be a leasehold, unless the Mortgagee shall otherwise consent, the fee title of the Property shall not merge with such leasehold, notwithstanding the union of said estates either in the ground lessor or in the fee owner, or in a third party, by purchase or otherwise. If, however, the Mortgagee shall be requested to and/or shall consent to such merger or such merger shall nevertheless occur without its consent, then this Mortgage shall attach to and cover and be a lien upon the fee title or any other estate in the Property demised under the ground lease acquired by the fee owner and the same shall be considered as mortgaged to the Mortgagee and the lien hereof spread to cover such estate with the same force and effect as though specifically herein granted.

5.8   Waivers of Mortgagor.  Mortgagor hereby waives the benefit of any stay, moratorium, valuation or appraisal law or judicial decision, any defects in any proceeding instituted by Mortgagee with respect to this Mortgage or any Loan Documents, and any right of redemption with respect to the Property.  Mortgagee waives any right to require marshalling of assets in connection with enforcement of Indebtedness and any right to require the sale of the Property in parcels or to select the order in which parcels are to be sold.  Mortgagor waives the right to all notices to which Mortgagor may otherwise be entitled; except those expressly provided for herein.  No delay on Mortgagee's part in exercising any power of sale, lien, option or other right with respect to the Property, and no notice or demand which may be given to or made upon the Mortgagor by Mortgagee with respect to any power of sale, lien, option or other right with respect to the Property, shall constitute a waiver thereof, or limit or impair Mortgagee's right to take any action or to exercise any power of sale, lien option, or any other right with respect to the Property without notice or demand, or prejudice Mortgagee's rights as against the Mortgagor in any respect.  In addition, no action taken by Mortgagee with respect to the Property shall in any way impair or limit Mortgagee's right to exercise any or all rights or remedies Mortgagee may otherwise have against Mortgagor or Borrower with respect to any Indebtedness.  This Mortgage shall not, in any manner, be construed as a compromise of any Indebtedness.  The pledge of, and security interest in, the Property by the Mortgagor to Mortgagee are absolute, unconditional and continuing and will remain in full force and effect until the Indebtedness have been fully paid and satisfied.  The pledge of, and security interest in, the Property will extend to and cover renewals of the Indebtedness and any number of extensions of time for payment thereof and will not be affected by any surrender, exchange, acceptance or release by the Mortgagee of any other pledge or any security held by it for any of the Indebtedness.  Notice of acceptance of the pledge and security interest, notice of extensions of credit to the Mortgagor or Borrower from time to time, notice of default, diligence, presentment, protest, demand for payment, notice of demand or protest, notice of making, renewing or extending any of the Indebtedness and any defense based upon a failure of Mortgagee to comply with the notice requirements of the applicable version of Uniform Commercial Code are hereby waived.  Mortgagee in its sole discretion may determine the reasonableness of the period which may elapse prior to the making of demand for any payment upon the Mortgagor or Borrower or any guarantor and it need not pursue any of its remedies against any other party before having recourse against the Property.  Mortgagee, at any time and from time to time, without the consent of the Mortgagor, may change the manner, place or terms of payment of or interest rates on, or change or extend the time of payment of, or renew or alter, any of the Indebtedness, without impairing or releasing the liabilities of the Mortgagor of its obligations to continue to pledge or grant a security interest in the Property.

5.9   Compliance with Illinois Mortgage Foreclosure Law.

(a)   If any provision in this Mortgage shall be inconsistent with any provision of the Illinois Mortgage Foreclosure (Chapter 735, Sections 5/15-1101 et seq., Illinois Compiled Statutes) (as may be amended from time to time, the "Act"), provisions of the Act shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can be construed in a manner consistent with the Act.

(b)   If any provision of this Mortgage shall grant to Mortgagee (including Mortgagee acting as a mortgagee-in-possession) or a receiver appointed to the provisions of Section 5.5 of this Mortgage any powers, rights or remedies prior to, upon or following the occurrence of an Event of Default which are more limited than the powers, rights or remedies that would otherwise be vested in Mortgagee or in such receiver under the Act in the absence of said provision, Mortgagee and such receiver shall be vested with the powers, rights and remedies granted in the Act to the full extent permitted by law.

(c)   Without limiting the generality of the foregoing, all expenses incurred by Mortgagee which are of the type referred to in Section 5/15-1510 or 5/15-1512 of the Act, whether incurred before or after any decree or judgement of foreclosure, and whether or not enumerated in this Mortgage, shall be added to the Indebtedness and/or by the judgement of foreclosure.

## ARTICLE 6

## MISCELLANEOUS

6.1   Uniform Commercial Code Security Agreement.  This Mortgage is intended to be a security agreement pursuant to the Uniform Commercial Code as adopted in the state where the Property is located for any of the items

specified above as part of the Property which may be subject to a security interest pursuant to the applicable version of the Uniform Commercial Code, and Mortgagor hereby grants Mortgagee a security interest in such items. Mortgagor agrees that Mortgagee may file this mortgage instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Mortgage shall be sufficient as a financing statement. In addition, Mortgagor authorizes to Lender to file any financing statements that Mortgagee may require to perfect a security interest with respect to said items. Mortgagor shall pay all costs of filing such financing statement and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Mortgagee may require. Without the prior written consent of Mortgagee, Mortgagor shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in such items, including replacements and additions thereto. Upon any Event of Default under this Mortgage, Mortgagee shall have the remedies of a secured party under the Uniform Commercial Code and, at Mortgagee's option, may also invoke the remedies provided in this Mortgage. In exercising any of said remedies, Mortgagee may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Mortgagee's remedies under the Uniform Commercial Code or of the remedies in this Mortgage. This Mortgage is to be filed for recording with the Recorder of Deeds of the county or counties where the Site is located. The addresses of Mortgagor (Debtor) and Mortgagee (Secured Party) are set forth in Section 6.4 of this Mortgage.

6.2    Waiver. No delay or omission by Mortgagee to exercise any right shall impair any such right or be a waiver thereof, but any such right may be exercised from time to time and as often as may be deemed expedient. Each waiver must be in writing and executed by Mortgagee to be effective, and a waiver on one occasion shall be limited to that particular occasion.

6.3    Amendments in Writing. No change, amendment, or modification hereof, or any part hereof, shall be valid unless in writing and signed by the parties hereto or their respective successors and assigns.

6.4    Notices. All notices, demands and requests given or required to be given by either party hereto to the other party shall be in writing and shall be deemed to have been properly given if sent by U.S. registered or certified mail, postage prepaid, return receipt requested, or by overnight delivery service, addressed as follows:

To Mortgagor:          Christine. F. Kraft
                       5293 West Beaver
                       Freeport, Illinois 61032
                       Stephenson County, Illinois

                       Merlin J. Kraft
                       5293 W. Beaver
                       Freeport, Illinois 61032
                       Stephenson County, Illinois

To Mortgagee:          Fifth Third Bank
                       222 South Riverside Plaza
                       Chicago, Illinois 60606
                       Cook County, Illinois

or to such other address as Mortgagor or Mortgagee may from time to time designate by written notice.

6.5    Interpretation. The titles to the Sections and Paragraphs hereof are for reference only and do not limit in any way the content thereof. Any words herein which are used in one gender shall be read and construed to mean or include the other gender wherever they would so apply. Any words herein which are used in the singular shall be read and construed to mean and to include the plural wherever they would so apply, and vice versa.

6.6    Covenant Running With the Land. Any act or agreement to be done or performed by Mortgagor shall be construed as a covenant running with the land and shall be binding upon Mortgagor and its successors and assigns as if they had personally made such agreement.

6.7   Complete Agreement; Counterparts. This Mortgage and the Exhibits are the complete agreement of the parties hereto and supersede all previous understandings relating to the subject matter hereof. This Mortgage may be amended only by an instrument in writing which explicitly states that it amends this Mortgage, and is signed by the party against whom enforcement of the amendment is sought. This Mortgage may be executed in several counterparts, each of which shall be regarded as an original and all of which shall constitute but one and the same instrument.

6.8   Validity. The provisions of this Mortgage are severable. If any term, covenant or condition of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, the remainder of this Mortgage shall not be invalidated thereby, and this Mortgage shall be construed without such provision.

6.9   Governing Law. This Mortgage for all purposes shall be construed and enforced in accordance with the domestic laws of the State of Illinois.

6.10   Binding Effect; Assignment. This Mortgage shall be binding upon and inure to the benefit of the respective legal representatives, successors and assigns of the parties hereto; however, Mortgagor may not assign any of its rights or delegate any of its obligations hereunder. Mortgagee may assign this Mortgage to any other person, firm, or corporation provided all of the provisions hereof shall continue in force and effect and, in the event of such assignment, any advances made by any assignee shall be deemed made in pursuance and not in modification hereof and shall be evidenced and secured by, the Loan Documents and this Mortgage.

6.11   Interest. In no event shall the interest rate and other charges related to the Indebtedness exceed the highest rate permissible under any law which a court of competent jurisdiction shall, in a final determination, deem applicable hereto. In the event that a court determines that Mortgagee has received interest and other charges hereunder in excess of the highest permissible rate applicable hereto, such excess shall be deemed received on account of, and shall automatically be applied to reduce, the principal balance of the Indebtedness, and the provisions hereof shall be deemed amended to provide for the highest permissible rate. If there is no Indebtedness outstanding, Mortgagee shall refund to Mortgagor such excess.

6.12   Maximum Indebtedness. Notwithstanding anything contained herein to the contrary, in no event shall the Indebtedness exceed 200% of the face amount of the Note(s); provided, however, in no event shall Mortgagee be obligated to advance funds in excess of the face amount of the Note(s).

6.13   Future Advances. The parties hereto intend and agree that this Mortgage shall secure unpaid balances of any loan advances, whether obligatory or not, and whether made pursuant to the Loan Documents or not, made by Mortgagee after this Mortgage is delivered to the Recorder for record to the extent that the total unpaid loan indebtedness, exclusive of interest thereon, does not exceed the maximum aggregate amount of unpaid loan Indebtedness which may be outstanding at any time, which is Eight Hundred Thousand and 00/100 Dollars ($800,000.00). Mortgagor further covenants and agrees to repay all such loan advances with interest, and that the covenants contained in this Mortgage shall apply to such loan advances as well.

6.14   Revolving Loan and Letters of Credit. Pursuant to the provisions of the Loan Documents, as to a portion of the Loan, Borrower may borrow up to $800,000.00("Revolving Fund") from time to time and as a Borrower repays all or a portion of the outstanding balance of the Revolving Funds, and provided no default exists hereunder or under any Loan Documents, Borrower may reborrow on a revolving loan basis additional funds, all subject to the terms and conditions of the Loan Documents, provided however, that the outstanding principal in respect of the Revolving Funds shall at no time exceed $800,000.00. All such borrowing and reborrowing of the Revolving Funds shall be included within the principal Indebtedness evidenced by the Note and the Indebtedness secured hereby, and shall be secured by this Mortgage. In addition to the Revolving funds, the principal balance shall include any advances from time to time made to fund draws upon the Letters of Credit. Mortgagee shall at no time be required to make advances to fund draws on the Letters of Credit such that the amount so advanced exceeds 200% of the face amount of the Indebtedness or $25,000,000, whichever is less at any time (the "Credit Amount"). The aggregate face amounts of the Letters of Credit and the Credit Amount shall be deemed to be additional principal and shall be included within the Indebtedness secured hereby, and along with all charges and expenses made or incurred by Mortgagee from time to time under the Letters of Credit, shall be secured by this Mortgage.

Instrument    Book Page
200700087104 OR  139 1371

All advances made after the date hereof in respect of such borrowing and reborrowing of the Revolving Funds and in respect of the Letters of Credit shall have the same priority as if such advances were made on the date hereof. Even if there is no existing debt outstanding at the time of any advance, this Mortgage shall constitute a lien for such future advance, if any, until all of the indebtedness secured by this Mortgage is paid in its entirety. Notwithstanding anything to the contrary herein contained, to the extent any statute law, ordinance, rule, regulation, or court opinion or determination requires the limitation of the indebtedness secured hereby in order to protect or assure the validity, enforceability or priority of this Mortgage or the lien hereof, then, to such extent, the indebtedness secured hereby will not exceed 200% of the face amount of the Note(s); provided, however, that in any event nothing herein shall limit the amount that shall be secured hereby when advanced in connection with the protection of or realization on the security hereof.

6.15    **Mortgagee's Status.** Mortgagor hereby acknowledges and agrees that the undertaking of Mortgagee under this Mortgage is limited as follows:

Mortgagee shall not act in any way as the agent for or trustee of Mortgagor. Mortgagee does not intend to act in any way for or on behalf of Mortgagor with respect to disbursement of the proceeds of the indebtedness secured hereby. Mortgagee's intent in imposing the requirements set forth herein and in the Loan Documents is that of a lender protecting the priority of its mortgage and the value of its security. Mortgagee assumes no responsibility for the completion of any improvements erected or to be erected upon the Property; the payment of bills or any other details in connection with the Property; any plans and specifications in connection with the Property; or Mortgagor's relations with any contractors. This Mortgage is not to be construed by Mortgagor or anyone furnishing labor, materials, or any other work or product for improving the Property as an agreement upon the part of the Mortgagee to assure anyone that such person will be paid for furnishing such labor, materials, or any other work or product; any such person must look entirely to Mortgagor for such payment. Mortgagee assumes no responsibility for the architectural or structural soundness of any improvements on or to be erected upon the Property or for the approval of any plans and specifications in connection therewith or for any improvements as finally completed.

6.16    **Multiple Mortgagors.** Each and every reference to any and all representations, warranties, covenants and undertakings of Mortgagor herein, including, but not limited to the Events of Default, shall be deemed to apply to each of the undersigned and any and all guarantors of any of the indebtedness, jointly and severally.

## ARTICLE 7

## ASSIGNMENT OF RENTS AND LEASES

7.1    **Assignment of Rents.** Mortgagor hereby grants, transfers, and assigns and sets over to Mortgagee all right, title and interest in and to, all rents, issues, profits and privileges (now due or which may hereafter become due) of, (a) the Property and all improvements at any time constructed thereon or any personal property or fixtures at any time installed or used therein, and (b) all leases now or hereafter existing on all or any part of the Property, whether written or oral, or any letting or any agreement for the use or occupancy of any part of the Property which may heretofore have been or which may hereafter be made or agreed to between Assignor or any other present, prior, or subsequent owner of the Property, or any interest therein, or which may be made or agreed to by Assignee, its successors or assigns, under the powers herein granted and any tenant or occupant of all or any part of the Property (the "Leases" and each, a "Lease"), including without limitation any Leases existing as of the date of this Mortgage and described in Exhibit "C" attached hereto and made a part hereof (the "Existing Leases"), all for the purpose of securing the prompt payment, performance and discharge, when due, of the indebtedness.

7.2    **Representations.** Mortgagor hereby represents that (a) except for the Existing Leases, there are no leases, subleases or agreements to lease (as lessor or lessee) or sublease (as sublessor or sublessee) all of or any part of the Property; (b) the Existing Leases are valid and enforceable, no default exists under the Existing Leases, Mortgagor is entitled to receive all the rents, issues and profits and to enjoy all the rents and benefits mentioned herein and assigned hereby, and the same have not been sold, assigned, transferred or set over by any instrument now in force, and shall not at any time during the life of this Mortgage be sold, assigned, transferred or set over by Mortgagor or any other person or persons taking under or through Mortgagor, except pursuant to this Mortgage; and (c) Mortgagor has the sole right to sell, assign, transfer, and set over the same and to grant and confer upon Mortgagee the rights, interests, powers and authorities herein granted and conferred.

Instrument   Book Page
200700087104 OR  139 1372

7.3   Further Assurances.  Mortgagor shall from time to time execute any and all instruments reasonably requested by Mortgagee in order to effectuate this Mortgage and to accomplish any of the purposes that are necessary or appropriate in connection with this assignment of the leases of the Property, including without limitation, specific assignments of any Lease or agreement relating to the use and occupancy of the Property or to any part thereof now or hereafter in effect, as may be necessary or desirable in Mortgagee's opinion in order to further secure Mortgagee hereunder.

7.4   Lease Modification.  Mortgagor shall not (i) amend, extend or modify any Lease, (ii) waive or release lessees from obligations under any Lease or Existing Lease, (iii) terminate or accept from a tenant the termination of any Lease or Existing Lease, (iv) consent to the Mortgage or subleasing of the lessee's interest under any lease or Existing Lease, or (v) evict or institute proceedings to evict any tenant under a Lease or Existing Lease, without the prior written consent of Mortgagee, which may be withheld in Mortgagee's sole and absolute discretion.

7.5   Lack of Responsibility.  Mortgagee shall not in any way be responsible for any failure to do any or all of the things for which the rights, interests, power or authority are herein granted; and Mortgagee shall not be responsible for, or liable under, any of the agreements undertaken or obligations imposed upon the Mortgagor as lessor under any of the Leases or other agreements with respect to the Property.  Mortgagee shall be accountable only for the amounts, if any, actually received by it under the terms of this Mortgage.

7.6   Effective Date.  The parties agree that this Mortgage is an actual assignment effective as of the date hereof, and that upon demand made by Mortgagee on the lessor or lessee under any of the Leases or on any person liable for any of the rents, issues, and profits of and from the Property or any part thereof, such lessor or lessee or person liable for any of such rents, issues and profits shall, and is hereby authorized and directed to pay to or upon Mortgagee's order, and without any inquiry of any nature, all rents and other payments then or thereafter accruing under the Leases or any other instrument or agreement, oral or written, granting rights to, and creating an obligation to pay rents, issues, or profits in connection with the Property.

7.7   Collection and Application of Rents.  As long as no Event of Default exists under the Indebtedness secured hereby, Mortgagee agrees not to demand from any lessor or lessee under the Leases or from any other persons liable therefor, any of the rents, issues or profits hereby assigned, but shall permit Mortgagor to collect all such rents, issues and profits from the Property and the Leases on, but not prior to, accrual, and Mortgagor shall apply the same (i) first, to the payment of taxes and assessments upon the Property before penalty or interest is due thereon, (ii) second, to the cost of such insurance and of such maintenance and repairs as are required by the terms of the Loan Documents, and (iii) third, to the payment of principal, premium (if any) and interest becoming due on the Loan Documents, before using any part of the same for any other purposes; provided, however, that notwithstanding the provisions of this section, all lessors and lessees under the Leases and all persons liable for rents, issues and profits of and from the Property shall comply with any demands for rents made by Mortgagee pursuant to the provisions of this Mortgage without reference to whether or not the same is made in accordance with this section and without further consent from Mortgagor.

7.8   Default; Remedies.  Upon or at any time after the occurrence of an Event of Default under the Indebtedness, Mortgagee may declare all sums secured hereby immediately due and payable and may, at Mortgagee's option, without notice, either in Mortgagee's person or by agent and with or without bringing any action or proceeding, or by any receiver to be appointed by a court, enter upon, take possession of, and manage and operate the Property and each and every part thereof, and in connection therewith, Mortgagee may make, enforce, and modify any of the Leases; fix or modify rents; repair, maintain, and improve the Property; employ contractors, subcontractors, and workmen in and about the Property; obtain and evict tenants; in its own name, sue for or otherwise collect or reserve any and all rents, issues and profits, including those past due and unpaid; employ leasing agents, managing agents, attorneys and accountants in connection with the enforcement of Mortgagee's rights hereunder and pay the reasonable fees and expenses thereof; and otherwise do and perform any and all acts which Mortgagee may deem necessary and appropriate in and about the Property for the protection thereof and of Mortgagee's rights hereunder or under the Loan Documents, and any and all amounts expended by Mortgagee in connection with the foregoing shall constitute additional Indebtedness secured hereby. Mortgagee shall apply any monies collected by Mortgagee, as aforesaid, less costs and expenses incurred, as aforesaid, upon any Indebtedness secured hereby in such order and manner as Mortgagee may determine. The entering upon and taking possession of the Property; the collection of rents, issues, and profits; the exercise of any rights hereinabove specified; and the application of collections, as aforesaid, shall not cure, waive, modify or affect any default hereunder or under the Loan Documents.

7.9    Tenants.  All tenants or occupants of any part of the Property (including without limitation, all persons claiming any interest as lessor or lessee under any Leases) are hereby authorized to recognize the claims and demands of Mortgagee without investigation as to the reason for any action taken by Mortgagee or the validity or the amount of indebtedness owing to or the existence of any default hereunder or under the Loan Documents, or the application to be made by Mortgagee, of any amounts to be paid to Mortgagee.  Mortgagee's sole signature shall be sufficient for the exercise of any right under this Mortgage and Mortgagee's sole receipt given for any sums received shall be a full discharge and release therefor to any such tenant or occupant of the Property.  Checks for all or any part of the rental collected under this Mortgage shall be made to the exclusive order of Mortgagee.

7.10    Performance of Obligations.  Mortgagor shall perform all of its obligations as lessor or lessee under any of the Leases, and shall give prompt notice to Mortgagee of any notice of default by Mortgagor under any of the Leases, together with a complete copy of any such notice.  Mortgagor shall enforce the performance and observance of each and every covenant of the lessor's or lessees' under the Leases.

7.11    Operation of Property.  Mortgagee shall not be obligated to perform or discharge any obligation, duty or liability under any of the Leases, nor shall this Mortgage operate to place upon Mortgagee responsibility for the control, operation, management, or repair of the Property or the carrying out of any of the terms and conditions of any of the Leases; nor shall this Mortgage operate to make Mortgagee liable for any waste committed on the Property by the lessor or lessee under any of the Leases or committed by any other party, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property, resulting in loss, injury or death to any tenant, licensee, employee, invitee or stranger.

7.12    Indemnification with respect to Leases.  Mortgagor shall, and does hereby agree to, indemnify and hold Mortgagee harmless of and from any and all liability, loss or damage which it may or might incur under any of the Leases or under or by reason of this Mortgage and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any of the Leases, except for liability, loss or damage and all claims and demands arising from actions taken by Mortgagee or its authorized representatives hereunder.  Should Mortgagee incur any such liability, loss or damage under any of the Leases or under or by reason of this Mortgage, or in the defense of any such claims or demands, the amount thereof, including costs, expenses, and reasonable attorney's fees, shall be secured hereby, Mortgagor shall reimburse Mortgagee therefor immediately upon demand, and upon Mortgagor's failure to do so, Mortgagee may declare all such sums immediately due and payable.

7.13    Advance Rent.  Mortgagor has not and shall not accept rent in advance under any of the Leases except only monthly rents for current months which may be paid in advance.

ARTICLE 8

DEFEASANCE

8.1    Defeasance.  If Mortgagor shall keep, observe and perform all of the covenants and conditions of this Mortgage on its part to be kept and performed and shall pay and perform, or cause to be paid and performed, all of the indebtedness whether now outstanding or hereafter arising, including all extensions and renewals thereof, and all of the other indebtedness, then Mortgagee shall release this Mortgage upon the request and at the expense of Mortgagor, otherwise this Mortgage shall remain in full force and effect.



20081218-167217

IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the date first above written.

MORTGAGOR:

_Merlin J. Kraft_ (signature)
(Signature)

Merlin J. Kraft
(Print Name)

_Christine F. Kraft_ (signature)
(Signature)

Christine F. Kraft
(Print Name)

OFFICIAL SEAL
AMY DAVIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/10/10

State of ___Illinois___    )
                           ):
County of ___Stephenson___ )

The foregoing instrument was acknowledged before me this __7-3-07__ by Merlin J. Kraft.

_Amy Davis_
Notary Public

State of ___Illinois___    )
                           ):
County of ___Stephenson___ )

The foregoing instrument was acknowledged before me this __7-3-07__ by Christine F. Kraft.

_Amy Davis_
Notary Public

This Instrument prepared by:

Meghan Beringer

Fifth Third Bank, a Michigan banking corporation
222 South Riverside Plaza
Chicago, Illinois 60606
Cook County Illinois

OFFICIAL SEAL
AMY DAVIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/10/10

20081218-16727

EXHIBIT A

The Site

Address: 5293 West Beaver Road
         Freeport, IL 61032

Permanent Index Number: 89-12-08-32-200-001

20081218-16727

EXHIBIT B

Restrictions on the Site Approved by Mortgagee

[Easement and Restrictions of Record as of this date (but excluding any prior Mortgage liens).]

EXHIBIT C

Existing Leases

Instrument    Book Page
200700087104 OR  139 1377

Old Republic National Title Insurance Company

**SECURITY FIRST TITLE CO.**
**205 WEST STEPHENSON STREET  FREEPORT, IL  61032**

Commitment Number:  68843S

### SCHEDULE C
### PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

The East part (East of the Pecatonica River) of the North West Quarter; The West 11 acres (North of the Pecatonica River) of the West Half of the Northeast Quarter;

Beginning 31 rods and 5 links South of a post 15 rods and 5 links East of the Northwest corner of the Northeast Quarter and running thence South 31 rods and 5 links, thence East 25 rods and 10 links, thence North 31 rods and 5 links, thence West to the place of beginning;

Lots 1 and 3 of the Northeast Quarter (East of the Pecatonica River);

The East Half of the South Half of the tract of 20 acres conveyed by Chancellor Martin to Levi Wilcoxon and by said Levi Wilcoxon to Charles M. Wilson and by said Charles M. Wilson to William H. Wilson and by said William H. Wilson to Josiah Pratt and by said Josiah Pratt to James Fleming and by said James Fleming to Joseph Kratzer and by Administrator's deed in the matter of the estate of said Joseph Kratzer, deceased, to Sarah Kratzer and by Executor's deed in the matter of the estate of Sarah Kratzer, deceased, to Robert H. Kramer and Charles Henry Kramer, being a part of the West Half of the North East Quarter;

The Northwest Half of the Northeast part (East of the Pecatonica River) of the South East Quarter.

All of the above being in Section 32, Township 28 North, Range 7 East of the Fourth Principal Meridian; situated in the Township of Waddams County of Stephenson, and State of Illinois.

\ Commitment
'ule C

(68843S.PFD/68843S/26)

023 - FTCH

**🎗 Fifth Third Bank**

Revolving Note

*9056599926/18*

OFFICER No. 09358

NOTE No. _____

$800,000.00

July 3, 2007
(Effective Date)

1.    <u>PROMISE TO PAY.</u> On or before July 3, 2008 (the "Maturity Date"), the undersigned, MCK Services, Inc., an Illinois corporation located at 575 North Henderson Road, Freeport, Stephenson County, Illinois 61032 ("Borrower") for value received, hereby promises to pay to the order of Fifth Third Bank, a Michigan banking corporation located at 222 South Riverside Plaza, Chicago, Cook County, Illinois 60606 for itself and as agent for any affiliate of Fifth Third Bancorp (together with its successors and assigns, the "Lender") the sum of Eight Hundred Thousand and 00/100 Dollars ($800,000.00) (the "Borrowing"), plus interest as provided herein, less such amounts as shall have been repaid in accordance with this Note. The outstanding balance of this Note shall appear on a supplemental bank record and is not necessarily the face amount of this Note, which record shall evidence the balance due pursuant to this Note at any time.

Principal and interest payments shall be initiated by Lender in accordance with the terms of this Note from Borrower's account through BillPayer 2000®. Borrower hereby authorizes Lender to initiate such payments from Borrower's account located at Fifth Third Bank, routing number 071923909 account number 7232238548. Borrower acknowledges and agrees that use of BillPayer 2000® shall be governed by the BillPayer 2000® Terms and Conditions, a copy of which Borrower acknowledges receipt. Borrower further acknowledges and agrees to maintain payments hereunder through BillPayer 2000® throughout the term of this Note. Each payment hereunder shall be applied first to advanced costs, charges and fees, then to accrued interest, and then to principal, which will be repaid in inverse chronological order of maturity.

Lender, in its reasonable discretion, may loan hereunder to Borrower on a revolving basis such amounts as may from time to time be requested by Borrower, provided that: (a) the aggregate principal amount borrowed hereunder at any time shall not exceed the Borrowing, and (b) no Event of Default shall exist or be caused thereby. The entire principal balance, together with all accrued and unpaid interest and any other charges, advances and fees, if any, outstanding hereunder, shall be due and payable in full on the earlier of the Maturity Date or upon acceleration of this Note.

The principal sum outstanding shall bear interest at a floating rate per annum equal to 1.5% in excess of the rate of interest per annum established from time to time by Fifth Third Bank at its principal office as its "Prime Rate", whether or not Fifth Third Bank shall at times lend to borrowers at lower rates of interest or, if there is no such prime rate, then such other rate as may be substituted by Fifth Third Bank for the prime rate (the "Interest Rate"). In the event of a change in said Prime Rate, the Interest Rate shall be changed immediately to 1.5% in excess of such new Prime Rate. Interest shall be calculated based on a 360-day year and charged for the actual number of days elapsed, and shall be payable on the 3rd day of each calendar month beginning on August 3, 2007.

Notwithstanding any provision to the contrary in this Note, in no event shall the interest rate charged on the Borrowing exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the principal sum outstanding and any other sums (other than interest) due and payable to Lender under this Note, and the provisions hereof shall be deemed amended to provide for the highest rate of interest permitted under applicable law.

2.    <u>USE OF PROCEEDS.</u> Borrower certifies that the proceeds of this loan are to be used for business purposes.

3.    <u>NOTE PROCESSING FEE.</u> Lender may charge, and Borrower agrees to pay on the above Effective Date, a note processing fee in the amount of $500.00.

4.    <u>REPRESENTATIONS AND WARRANTIES.</u> Borrower hereby warrants and represents to Lender the following:

PROMISSORY NOTE © Fifth Third Bancorp 2001M (5/07)



EXHIBIT
B

63435-16-3-T.WHIT



(a)    Organization and Qualification. Borrower is duly organized, validly existing and in good standing under the laws of the State of its incorporation, has the power and authority to carry on its business and to enter into and perform all documents relating to this loan transaction, and is qualified and licensed to do business in each jurisdiction in which such qualification or licensing is required. All information provided to Lender with respect to Borrower and its operations is true and correct.

(b)    Due Authorization. The execution, delivery and performance by Borrower of the Loan Documents have been duly authorized by all necessary corporate action, and shall not contravene any law or any governmental rule or order binding on Borrower, or the articles of incorporation and code of regulations or by-laws of Borrower, nor violate any agreement or instrument by which Borrower is bound nor result in the creation of a Lien on any assets of Borrower except the Lien granted to Lender herein. Borrower has duly executed and delivered to Lender the Loan Documents and they are valid and binding obligations of Borrower enforceable according to their respective terms, except as limited by equitable principles and by bankruptcy, insolvency or similar laws affecting the rights of creditors generally. No notice to, or consent by, any governmental body is needed in connection with this transaction.

(c)    Litigation. There are no suits or proceedings pending or threatened against or affecting Borrower, and no proceedings before any governmental body are pending or threatened against Borrower except as otherwise specifically disclosed to Lender on or prior to the Effective Date or as set forth on any Litigation Exhibit which may be attached hereto.

(d)    Business. Borrower is not a party to or subject to any agreement or restriction that may have a material adverse effect on Borrower's business, properties or prospects. Borrower has all franchises, authorizations, patents, trademarks, copyrights and other rights necessary to advantageously conduct its business. They are all in full force and effect and are not in known conflict with the rights of others.

(e)    Licenses, etc. Borrower has obtained any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business. Borrower possesses adequate licenses, patents, patent applications, copyrights, trademarks, trademark applications, and trade names to continue to conduct its business as heretofore conducted by it, without any conflict with the rights of any other person or entity. All of the foregoing are in full force and effect and none of the foregoing are in known conflict with the rights of others.

(f)    Laws. Borrower is in material compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions or other requirements applicable to or imposed upon Borrower by any law or by any governmental authority, court or agency.

(g)    Title. Borrower has good and marketable title to the assets reflected on the most recent balance sheet submitted to Lender, free and clear from all liens and encumbrances of any kind, except for (collectively, the "Permitted Liens") (a) current taxes and assessments not yet due and payable, (b) liens and encumbrances, if any, reflected or noted on such balance sheet or notes thereto, (c) assets disposed of in the ordinary course of business, and (d) any security interests, pledges, assignments or mortgages granted to Lender to secure the repayment or performance of the Obligations.

(h)    Subsidiaries and Partnerships. Borrower has no subsidiaries and is not a party to any partnership agreement or joint venture agreement.

5.    AFFIRMATIVE COVENANTS. Borrower covenants with, and represents and warrants to, Lender that, from and after the execution date of the Loan Documents until the Obligations are paid and satisfied in full:

(a)    Access to Business Information. Borrower shall maintain proper books of accounts and records and enter therein complete and accurate entries and records of all of its transactions in accordance with generally accepted accounting principles and give representatives of Lender access thereto at all reasonable times, including permission to: (a) examine, copy and make abstracts from any such books and records and such other information which might be helpful to Lender in evaluating the status of the Obligations as it may reasonably



request from time to time, and (b) communicate directly with any of Borrower's officers, employees, agents, accountants or other financial advisors with respect to the business, financial conditions and other affairs of the Borrower.

(b)    <u>Inspection of Collateral.</u>  Borrower shall give Lender reasonable access to the Collateral and the other property securing the Obligations for the purpose of performing examinations thereof and to verify its condition or existence.

(c)    <u>Financial Statements.</u>  Borrower shall maintain a standard and modern system for accounting and shall furnish to Lender:

(i)    Within 30 days after the end of each quarter, a copy of Borrower's financial statements for that quarter and for the year to date compiled by a firm of independent certified public accountants acceptable to Lender, (which acceptance shall not be unreasonably withheld) and certified as complete and correct, subject to changes resulting from year-end adjustments, by the principal financial officer of Borrower;

(ii)    Within 120 days after the end of each fiscal year, a copy of Borrower's compiled financial statements by a firm of independent certified public accountants acceptable to Lender (which acceptance shall not be unreasonably withheld) and certified as complete and correct, subject to changes resulting from year-end adjustments, by the principal financial officer of Borrower;

(iii)    With the statements submitted above, a certificate signed by the principal financial officer of Borrower, (i) stating he is familiar with all documents relating to Lender and that no Event of Default specified herein, nor any event which upon notice or lapse of time, or both would constitute such an Event of Default, has occurred, or if any such condition or event existed or exists, specifying it and describing what action Borrower has taken or proposes to take with respect thereto, and (ii) setting forth, in summary form, figures showing the financial status of Borrower in respect of the financial restrictions contained herein;

(iv)    Within 30days after the end of each quarter, Borrower shall deliver to Lender an accounts payable aging report in form and substance reasonably acceptable to Lender;

(v)    Within 30 days after the end of each quarter, Borrower shall deliver to Lender an jobs completed report in form and substance reasonably acceptable to Lender;

(vi)    Immediately upon any officer of Borrower obtaining knowledge of any condition or event which constitutes or, after notice or lapse of time or both, would constitute an Event of Default, a certificate of such person specifying the nature and period of the existence thereof, and what action Borrower has taken or is taking or proposes to take in respect thereof;

(vii)    Within 30 days after the end of each quarter,  Borrower shall deliver to Lender an accounts receivable aging report in form and substance reasonably acceptable to Lender;

(viii)    Within 30 days after the end of each quarter, Borrower shall deliver to Lender a detailed summary of Borrower's jobs-in-progress in a form and substance reasonably acceptable to Lender.  This report shall also include an indication of the status of each job.

All of the statements referred to in (i), (ii)  and (v) above shall be in conformance with generally accepted accounting principles and give representatives of Lender access thereto at all reasonable times, including permission to examine, copy and make abstracts from any such books and records and such other information which might be helpful to Lender in evaluating the status of the loans as it may reasonably request from time to time.

20081218-16727

With all financial statements delivered to Lender as provided in (i), (ii) and (v) above, Borrower shall deliver to Lender a Financial Statement Compliance Certificate in addition to the other information set forth therein, which certifies the Borrower's compliance with the financial covenants set forth herein and that no Event of Default has occurred.

If at any time Borrower has any additional subsidiaries which have financial statements that could be consolidated with those of Borrower under generally accepted accounting principles, the financial statements required by subsections (i), (ii) and (v) above shall be the financial statements of Borrower and all such subsidiaries prepared on a consolidated and consolidating basis.

(d)    Condition and Repair.  Borrower shall maintain its equipment and all Collateral used in the operation of its business in good repair and working order and shall make all appropriate repairs, improvements and replacements thereof so that the business carried on in connection therewith may be properly and advantageously conducted at all times.

(e)    Insurance.  At its own cost, Borrower shall obtain and maintain insurance against (a) loss, destruction or damage to its properties and business of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower and, in any event, sufficient to fully protect Lender's interest in the Collateral, and (b) insurance against public liability and third party property damage of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower. All such policies shall (i) be issued by financially sound and reputable insurers, (ii) name Lender as an additional insured and, where applicable, as loss payee under a Lender loss payable endorsement satisfactory to Lender, and (iii) shall provide for thirty (30) days written notice to Lender before such policy is altered or canceled.  All of the insurance policies required hereby shall be evidenced by one or more Certificates of Insurance delivered to Lender by Borrower on the Closing Date and at such other times as Lender may request from time to time.

(f)    Taxes.  Borrower shall pay when due all taxes, assessments and other governmental charges imposed upon it or its assets, franchises, business, income or profits before any penalty or interest accrues thereon (provided, however, that extensions for filing and payment of such taxes shall be permitted hereunder if disclosed to and consented to by Lender), and all claims (including, without limitation, claims for labor, services, materials and supplies) for sums which by law might be a lien or charge upon any of its assets, provided that (unless any material item or property would be lost, forfeited or materially damaged as a result thereof) no such charge or claim need be paid if it is being diligently contested in good faith, if Lender is notified in advance of such contest and if Borrower establishes an adequate reserve or other appropriate provision required by generally accepted accounting principles and deposits with Lender cash or bond in an amount acceptable to Lender.

(g)    Existence; Business.  Borrower shall (a) maintain its existence as a corporation, (b) continue to engage primarily in business of the same general character as that now conducted, and (c) refrain from entering into any lines of business substantially different from the business or activities in which Borrower is presently engaged.

(h)    Compliance with Laws.  Borrower shall comply with all federal, state and local laws, regulations and orders applicable to Borrower or its assets including but not limited to all Environmental Laws, in all respects material to Borrower's business, assets or prospects and shall immediately notify Lender of any violation of any rule, regulation, statute, ordinance, order or law relating to the public health or the environment and of any complaint or notifications received by Borrower regarding to any environmental or safety and health rule, regulation, statute, ordinance or law. Borrower shall obtain and maintain any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business and as may be required from time to time by applicable law.

(i)    Notice of Default.  Borrower shall, within ten (10) days of its knowledge thereof, give written notice to Lender of: (a) the occurrence of any event or the existence of any condition which would be, after notice or lapse of applicable grace periods, an Event of Default, and (b) the occurrence of any event or the existence of



any condition which would prohibit or limit the ability of Borrower to reaffirm any of the representations or warranties, or to perform any of the covenants, set forth herein.

(j)    Costs.  Borrower shall reimburse Lender for any and all fees, costs and expenses including, without limitation, reasonable attorneys' fees, other professionals' fees, appraisal fees, environmental assessment fees (including Phase I and Phase II assessments), field exam audits, expert fees, court costs, litigation and other expenses (collectively, the "Costs") incurred or paid by Lender or any of its officers, employees or agents in connection with:  (a) the preparation, negotiation, procurement, review, administration or enforcement of the Loan Documents or any instrument, agreement, document, policy, consent, waiver, subordination, release of lien, termination statement, satisfaction of mortgage, financing statement or other lien search, recording or filing related thereto (or any amendment, modification or extension to, or any replacement or substitution for, any of the foregoing), whether or not any particular portion of the transactions contemplated during such negotiations is ultimately consummated, and (b) the defense, preservation and protection of Lender's rights and remedies thereunder, including without limitation, its security interest in the Collateral or any other property pledged to secure the Loans, whether incurred in, bankruptcy, insolvency, foreclosure or other litigation or proceedings or otherwise. The Costs shall be due and payable upon demand by Lender.  If Borrower fails to pay the Costs when upon such demand, Lender is entitled to disburse such sums as Obligations.  Thereafter, the Costs shall bear interest from the date incurred or disbursed at the highest rate set forth in the Note(s).  This provision shall survive the termination of this Agreement and/or the repayment of any amounts due or the performance of any Obligation.

(k)    Other Amounts Deemed Loans.  If Borrower fails to pay any tax, assessment, governmental charge or levy or to maintain insurance within the time permitted or required by this Note, or to discharge any Lien prohibited hereby, or to comply with any other Obligation, Lender may, but shall not be obligated to, pay, satisfy, discharge or bond the same for the account of Borrower. To the extent permitted by law and at the option of Lender, all monies so paid by Lender on behalf of Borrower shall be deemed Obligations and Borrower's payments under this Note may be increased to provide for payment of such Obligations plus interest thereon.

(l)    Further Assurances.  Borrower shall execute, acknowledge and deliver, or cause to be executed, acknowledged or delivered, any and all such further assurances and other agreements or instruments, and take or cause to be taken all such other action, as shall be reasonably necessary from time to time to give full effect to the Loan Documents and the transactions contemplated thereby.

6.    NEGATIVE COVENANTS.  Borrower covenants with, and represents and warrants to, Lender that, from and after the execution date hereof until the Obligations are paid and satisfied in full:

(a)    Merger; Disposition of Assets.  Borrower shall not (a) change its capital structure, (b) merge or consolidate with any entity, (c) amend or change its articles of incorporation and code of regulations or by-laws or (d) sell, lease, transfer or otherwise dispose of, or grant any person an option to acquire, or sell and leaseback, all or any substantial portion of its assets, whether now owned or hereafter acquired, except for bona fide sales of Inventory in the ordinary course of business and dispositions of property which is obsolete and not used or useful in its business.

7.    FINANCIAL COVENANTS.  Borrower and Lender hereby agrees as follows:

(a)    Debt Service Coverage Ratio.  Borrower shall not permit its Debt Service Coverage Ratio, on a consolidated basis, to be less than the following at the end of any year during any of the following periods:

| Period | Min. Ratio |
|---|---|
| 01/01/2007 and thereafter | 1.25 to 1.0 |

(b)    Minimum Tangible Capital Base.  At the end of each fiscal year of Borrower during the following time periods, Borrower shall maintain a minimum Tangible Capital Base on a consolidated basis of at least the following amounts:

| Period | Min. Amount |
|---|---|
| 01/01/2007 and thereafter | $150,000.00 |

8.    DEFINITIONS.  Certain capitalized terms have the meanings set forth on any exhibit hereto, in the Security Agreement, if applicable, or any other Loan Document. All financial terms used herein but not defined on the exhibits, in the Security Agreement, if applicable, or any other Loan Document have the meanings given to them by generally accepted accounting principles.  All other undefined terms have the meanings given to them in the Uniform Commercial Code as adopted in the state whose law governs this instrument. The following definitions are used herein:

(a)    "Debt Service Coverage Ratio" means the ratio of (a) the sum of Borrower's net income for a fiscal year before taxes, depreciation, amortization, rents, and interest expense, less distributions, dividends and other extraordinary items to (b) the sum of (i) Borrower's interest expense and rents and (ii) all principal payments with respect to indebtedness that were paid or were due and payable by all consolidated entities during the period.

(b)    "Indebtedness" means (i) all items (except items of capital stock, of capital surplus, of general contingency reserves or of retained earnings, deferred income taxes, and amount attributable to minority interest if any) which in accordance with generally accepted accounting principles would be included in determining total liabilities on a consolidated basis (if Borrower should have a subsidiary) as shown on the liability side of a balance sheet as at the date as of which indebtedness is to be determined, (ii) all indebtedness secured by any mortgage, pledge, lien or conditional sale or other title retention agreement to which any property or asset owned or held is subject, whether or not the indebtedness secured thereby shall have been assumed (excluding non-capitalized leases which may amount to title retention agreements but including capitalized leases), and (iii) all indebtedness of others which Borrower or any subsidiary has directly or indirectly guaranteed, endorse (otherwise than for collection or deposit in the ordinary course of business), discounted or sold with recourse or agreed (contingently or otherwise) to purchase or repurchase or otherwise acquire, or in respect of which Borrower or any subsidiary has agreed to apply or advance funds (whether by way of loan, stock purchase, capital contribution or otherwise) or otherwise to become directly or indirectly liable.

(c)    "Lien" means any security interest, mortgage, pledge, assignment, lien or other encumbrance of any kind, including interests of vendors or lessors under conditional sale contracts or capital leases.

(d)    "Loan Documents" means any and all Rate Management Agreements and each and every document or agreement executed by any party evidencing, guarantying or securing any of the Obligations; and "Loan Document" means any one of the Loan Documents.

(e)    "Long Term Debt" means indebtedness which either by its terms is not payable in full within one year from the date incurred, or the repayment of which may, at the option of the obligor, be extended for a period of more than one year from the date incurred.

(f)    "Obligation(s)" means all loans, advances, indebtedness and each and every other obligation or liability of Borrower owed to each of Lender and/or any affiliate of Fifth Third Bancorp, however created, of every kind and description whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease overdraft, agreement or otherwise, whether or not secured by additional collateral, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every obligation or liability arising under the loan document, any and all Rate Management Obligations (as defined in the Loan Documents), letters of credit now or hereafter issued by Lender or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, and agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications and restatements thereof, and all expenses and attorneys' fees incurred by Lender hereunder or any other document, instrument or agreement related to any of the foregoing.

(g)    "Subordinated Indebtedness" means Indebtedness that is subordinated to the Obligations owed to Lender, in a manner satisfactory to Lender in form and substance.

(h)    "Subsidiary" means any corporation of which Borrower directly or indirectly owns or controls at the time outstanding stock having ordinary circumstances (not depending on the happening of a contingency) voting power to elect a majority of the board of directors of said corporation.

(i)    "Tangible Capital Base" means the sum of the Tangible Net Worth of Borrower, and all Subordinated Indebtedness.

(j)    "Tangible Net Worth" shall mean the total of the capital stock (less treasury stock), paid-in capital surplus, general contingency reserves and retained earnings (deficit) of Borrower and any Subsidiary as determined on a consolidated basis in accordance with generally accepted accounting principles after eliminating all inter-company items and all amounts properly attributable to minority interests, if any, in the stock and surplus of any Subsidiary, minus the following items (without duplication of deductions), if any, appearing on the consolidated balance sheet of Borrower:

(i)    all deferred charges (less amortization, unamortized debt discount and expense and corporate organization expenses);

(ii)    the book amount of all assets which would be treated as intangibles under generally accepted accounting principles, including, without limitation, such items as goodwill, trademark applications, trade names, service marks, brand names, copyrights, patents, patent applications and licenses, and rights with respect to the foregoing;

(iii)    the amount by which aggregate inventories or aggregate securities appearing on the asset side of such consolidated balance sheet exceed the lower of cost or market value (at the date of such balance sheet) thereof;

(iv)    any write-up in the book amount of any asset resulting from a revaluation thereof from the book amount entered upon acquisition of such asset; and

(v)    Any related party notes or accounts receivable. Related parties shall generally include entities with common ownership or management with the Borrower, and employees of the Borrower.

(k)    "Rate Management Agreement" means any agreement, device or arrangement providing for payments which are related to fluctuations of interest rates, exchange rates, forward rates, or equity prices, including, but not limited to, dollar-denominated or cross-currency interest rate exchange agreements, forward currency exchange agreements, interest rate cap or collar protection agreements, forward rate currency or interest rate options, puts and warrants, and any agreement pertaining to equity derivative transactions (e.g., equity or equity index swaps, options, caps, floors, collars and forwards), including without limitation any ISDA Master Agreement between Borrower and Lender or any affiliate of Fifth Third Bancorp, and any schedules, confirmations and documents and other confirming evidence between the parties confirming transactions thereunder, all whether now existing or hereafter arising, and in each case as amended, modified or supplemented from time to time.

(l)    "Rate Management Obligations" means any and all obligations of Borrower to Lender or any affiliate of Fifth Third Bancorp, whether absolute, contingent or otherwise and howsoever and whensoever (whether now or hereafter) created, arising, evidenced or acquired (including all renewals, extensions and modifications thereof and substitutions therefore), under or in connection with (i) any and all Rate Management Agreements, and (ii) any and all cancellations, buy backs, reversals, terminations or assignments of any Rate Management Agreement.

9.    EVENTS OF DEFAULT.  Upon the occurrence of any of the following events (each, an "Event of Default"), Lender may, at its option, without any demand or notice whatsoever, cease making advances and declare this

Note and all Obligations to be fully due and payable in their aggregate amount, together with accrued interest and all prepayment premiums, fees, and charges applicable thereto:

(a)     Any failure to make any payment when due of principal or accrued interest on this Note or any other Obligation and such nonpayment remains uncured for 10 days after written notice from Lender to Borrower of such default.

(b)     Any representation or warranty of Borrower set forth in this Note or in any agreement, instrument, document, certificate or financial statement evidencing, guarantying, securing or otherwise related to, this Note or any other Obligation shall be materially inaccurate or misleading.

(c)     Borrower shall fail to observe or perform any other material term or condition of this Note or any other term or condition set forth in any agreement, instrument, document, certificate or financial statement evidencing, guarantying or otherwise related to this Note or any other Obligation, or Borrower shall otherwise default in the observance or performance of any covenant or agreement set forth in any of the foregoing for 30 days after written notice from Lender to Borrower of such default.

(d)     The dissolution of Borrower or of any endorser or guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing.

(e)     The creation of any Lien (except a lien to Lender) on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any endorser or guarantor hereof including, without limitation, any property deposited with Lender.

(f)     In the reasonable judgment of Lender in good faith, any material adverse change occurs in the existing or prospective financial condition of Borrower that will affect the ability of Borrower to repay the Obligations.

(g)     A commencement by the Borrower of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of the Borrower in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Borrower, or for any substantial part of the property of Borrower, or ordering the wind-up or liquidation of the affairs of Borrower; or the filing and pendency for 30 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Borrower of any general assignment for the benefit of creditors; or the failure of the Borrower of the Obligations generally to pay its debts as such debts become due; or the taking of action by the Borrower in furtherance of any of the foregoing.

(h)     Nonpayment by the Borrower of any Rate Management Obligation relating to this Note when due or the breach by the Borrower of any term, provision or condition contained in any Rate Management Agreement.

10.     REMEDIES.  After the occurrence of an Event of Default, in addition to any other remedy permitted by law, Lender may at any time, without notice, apply the Collateral to this Note or such other Obligations, whether due or not, and Lender may, at its option, proceed to enforce and protect its rights by an action at law or in equity or by any other appropriate proceedings; provided that this Note and the Obligations shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order.  No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver.  No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or



remedy. No waiver or indulgence by Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence in the future.

11.   LATE PAYMENTS; DEFAULT RATE; FEES.  If any payment is not paid when due (whether by acceleration or otherwise) or within 10 days thereafter, undersigned agrees to pay to Lender a late payment fee as provided for in any loan agreement or 5% of the payment amount, whichever is greater with a minimum fee of $20.00. After an Event of Default, Borrower agrees to pay to Lender a fixed charge of $25.00, or Borrower agrees that Lender may, without notice, increase the Interest Rate by three percentage points (3%) (the "Default Rate"), whichever is greater. Lender may impose a non-sufficient funds fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender.

12.   ENTIRE AGREEMENT.  Borrower agrees that there are no conditions or understandings which are not expressed in this Note and the documents referred to herein.

13.   SEVERABILITY.  The declaration of invalidity of any provision of this Note shall not affect any part of the remainder of the provisions.

14.   ASSIGNMENT.  Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender. Borrower agrees that Lender may assign some or all of its rights and remedies described in this Note without notice to, or prior consent from, the Borrower.

15.   MODIFICATION; WAIVER OF LENDER.  The modification or waiver of any of Borrower's obligations or Lender's rights under this Note must be contained in a writing signed by Lender.  Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion.  Borrower's obligations under this Note shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co- borrower, endorser or guarantor or (ii) any of its rights against any co- borrower, guarantor or endorser.

16.   WAIVER OF BORROWER.  Demand, presentment, protest and notice of dishonor, notice of protest and notice of default are hereby waived by Borrower, and any endorser or guarantor hereof.  Each of Borrower, including but not limited to all co-makers and accommodation makers of this Note, hereby waives all suretyship defenses including but not limited to all defenses based upon impairment of Collateral and all suretyship defenses described in Section 3-605 of the Uniform Commercial Code (the "UCC").  Such waiver is entered to the full extent permitted by Section 3-605 (i), of the UCC.

17.   GOVERNING LAW; CONSENT TO JURISDICTION.  This Note is delivered in, is intended to be performed in, will be construed and enforceable in accordance with and governed by the internal laws of, the State of Illinois, without regard to principles of conflicts of law.  Borrower agrees that the state and federal courts in the County where the Lender is located shall have exclusive jurisdiction over all matters arising out of this Note, and that service of process in any such proceeding shall be effective if mailed to Borrower at the address set forth herein.

18.   JURY WAIVER.  BORROWER, AND ANY ENDORSER OR GUARANTOR HEREOF, WAIVE THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

19.   WARRANT OF ATTORNEY.  Borrower authorizes any attorney of record  to appear for it in any court of record in the State of Illinois, after maturity of this Note, whether by its terms or upon default, acceleration or otherwise, to waive the issuance and service of process, and release all errors, and to confess judgment against it in favor of Lender for the principal sum due herein together with interest, charges, court costs and attorneys' fees. Stay of execution and all exemptions are hereby waived. If this Note or any Obligation is referred to an attorney for collection, and the payment is obtained without the entry of a judgment, the obligors shall pay to the holder of such obligations its attorneys' fees. EACH OF BORROWER AND ANY ENDORSER OR ANY GUARANTOR AGREES THAT AN ATTORNEY WHO IS COUNSEL TO LENDER OR ANY OTHER HOLDER OF SUCH OBLIGATION MAY ALSO ACT AS ATTORNEY OF RECORD FOR BORROWER WHEN TAKING THE ACTIONS DESCRIBED ABOVE IN THIS PARAGRAPH.  BORROWER AGREES

20081218-16727

THAT ANY ATTORNEY TAKING SUCH ACTIONS MAY BE PAID FOR THOSE SERVICES BY LENDER OR HOLDER OF SUCH OBLIGATION. BORROWER WAIVES ANY CONFLICT OF INTEREST THAT MAY BE CREATED BECAUSE THE ATTORNEY REPRESENTING THE BORROWER IS BEING PAID BY LENDER OR THE HOLDER OF SUCH OBLIGATION.

BORROWER:

MCK Services, Inc., an Illinois corporation

By: _____

(Authorized Signer)

Christine F. Kraft, President

(Print Name and Title)

JENN

20090315-65

Rec'd
5/5/9

Mat 3-3-09

### Fifth Third Bank

**Request for Credit Commitment Change in Terms/Short Term Extension**

Credit Recommended by:
Recommended by: CHRIS E. COSGELL
Reviewed by:

As of Date: 01/15/2009
Customer: MCK SERVICES INC.
Obligor: 5908630920
CREQ#: 99

Until
March 3, 2009

**CHANGE IN TERMS (Non-Material)/SHORT TERM EXTENSION (90 Day One Time Max):**
Hereby Forbearance to allow completion of year end financials and to allow time to work out amortization reductions but includes principal reduction

| Borrower | Loan # | Type | Commitment | Principal Current Balance | Outstanding | Security | Rate | Maturity Date |
|---|---|---|---|---|---|---|---|---|
| MCK SERVICES INC. | 26 | 212 | 33.00 | $703,160.11 | $703,160.51 | First Lien on Personal Residence | 4.75% | 12/23/2008 |

Approved By: R. Casingheems     Date: 1-15-09

1